Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| MARÍA ELENA MUÑOZ COLÓN<br><br>Peticionaria<br><br>v.<br><br>FÉLIX ANTONIO REYES VÉLEZ<br><br>Recurrido | KLCE202401183 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>E AL2007-0920<br><br>Sobre:<br>Alimentos |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de noviembre de 2024.

Comparece Antonio Alberto Reyes Muñoz (en adelante, hijo, joven adulto o señor Reyes Muñoz) y María Elena Muñoz Colón (en adelante, señora Muñoz Colón) (en conjunto, parte peticionaria), mediante un recurso de *Certiorari*, para solicitarnos la revisión de la *Resolución*, emitida el 22 de mayo de 2024, y notificada el 1 de julio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI o foro primario).[1] Mediante la *Resolución* recurrida, el tribunal *a quo* concedió un crédito por los $1,488.00 dólares que estuvo recibiendo el joven adulto como beneficio de estudios por ser hijo de un veterano de guerra pensionado, y ordenó la acreditación de la referida cantidad a cualquier deuda de retroactivo adeudada. Dispuso, además, dejar sin efecto la pensión alimentaria establecida al 30 de julio de 2023, puesto a que el joven adulto no requirió, ni demostró que fuese acreedor de la misma y

---

[1] Apéndice del recurso, a las págs. 91-96.

Número Identificador

RES2024_____

más aún que, en la vista celebrada el 12 de diciembre de 2023, este renunció a solicitar una pensión alimentaria entre parientes.[2]

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari*

I

Conviene iniciar esta parte recordando que esta es la tercera vez que las partes del título acuden a este tribunal revisor mediante un recurso apelativo.[3] Por tanto, nos circunscribiremos a aquellos hechos procesales relevantes al asunto sujeto a revisión.

Las partes del título son los progenitores del ahora mayor de edad, el peticionario del título, señor Reyes Muñoz, quien nació el 30 de julio de 2002.

Conforme se desprende de los autos, allá para el 17 de diciembre de 2007, y durante la minoridad del hijo habido entre las partes, la señora Muñoz Colón instó una *Petición* de alimentos contra el señor Félix Antonio Reyes Vélez (en adelante, señor Reyes Vélez o recurrido) a favor del hijo de ambos.[4] Como resultado de lo anterior, el tribunal de instancia dictó *Sentencia* el 2 de octubre de 2012.[5] Surge del antedicho dictamen que se estableció una pensión alimentaria por la suma de $723.23 dólares quincenales, efectiva al 17 de diciembre de 2017, y que se dispuso que la misma se pagaría a través de la Administración para el Sustento de Menores (ASUME). Además, se estableció la suma de $8,000.00 dólares por concepto de honorarios de abogado a favor del alimentista, a ser satisfechos en 60 días.[6]

Luego, hubo un proceso de revisión de pensión alimentaria el cual culminó cuando el foro primario notificó una *Resolución* el 4 de

---

[2] Apéndice del recurso, a la pág. 96.
[3] El primer recurso apelativo es el alfanumérico KLAN201401261. Por otro lado, el segundo recurso apelativo es el alfanumérico KLCE201900684.
[4] Apéndice del recurso, a las págs. 1-3.
[5] *Íd.,* a las págs. 7-13.
[6] *Íd.,* a la pág. 12.

enero de 2019.[7] Allí modificó la pensión alimentaria a la suma de $1,559.63 dólares mensuales, pagaderos a través de la ASUME. Además, dispuso que el plan médico del menor sería provisto por el recurrido, así como que los gastos de salud del hijo serían cubiertos a proporción. Subsiguientemente, mediante *Resolución y Orden* en reconsideración, notificada el 29 de abril de 2019, el tribunal de instancia impuso $1,000.00 dólares por concepto de honorarios de abogado a favor de la parte custodio a ser pagados en 45 días.[8]

Posteriormente, en otro proceso de revisión, mediante *Resolución,* notificada el 12 de julio de 2022, el foro de instancia modificó la pensión alimentaria de forma provisional, a la suma de $1,455.47 dólares mensuales a través de la ASUME.[9] Así las cosas, mediante *Resolución* notificada el 25 de abril de 2023, el foro *a quo* dispuso que la antedicha pensión alimentaria provisional permanecería como final, efectiva al 16 de enero de 2020. Además, expresó que el hijo se beneficiaría del plan médico provisto por el recurrido.[10]

De ahí, el 17 de julio de 2023, el recurrido presentó una *Solicitud de Relevo de Pensión Alimentaria.*[11] Adujo, en síntesis, que su hijo advendría a la mayoridad el 30 de julio de 2023, por lo que solicitaba el relevo de la pensión alimentaria. En respuesta, mediante *Orden,* notificada el 9 de agosto de 2023, el foro primario le requirió al recurrido acreditar haber notificado el escrito a la señora Muñoz Colón y al hijo habido entre las partes.[12] El recurrido cumplió con lo requerido.[13]

Luego, el recurrido presentó un escrito al cual le adjuntó una Certificación de la ASUME y arguyó que su hijo, ahora mayor de

---

[7] Apéndice del recurso, a las págs. 18-19.
[8] *Íd.*, a las págs. 28-29.
[9] *Íd.*, a las págs. 30-32.
[10] *Íd.*, a las págs. 34-35.
[11] *Íd.*, a las págs. 40-41.
[12] *Íd.*, a las págs. 44-45.
[13] *Íd.*, a las págs. 46-50.

edad, se acogió a un beneficio que ofrecen las fuerzas armadas de los Estados Unidos de América (Army) por ser el recurrido un veterano pensionado. Indico que, por lo anterior, el alimentista estaba recibiendo una suma mensual de dinero, lo cual nunca se le informó, y razón que esta suma podía sustituir parte del pago de la pensión y/o plan de pago de una deuda en repago. Al amparo de lo expuesto, solicitó que se le acreditara cierta suma de dinero al balance adeudado.[14] En respuesta, el tribunal de instancia concedió término al joven adulto para que se expresara.[15]

Semanas más tarde, el tribunal *a quo* emitió una *Orden* en la cual señaló una vista para el 12 de diciembre de 2023, a la cual debían comparecer las partes del título y el joven adulto.[16]

Según se desprende de los autos, producto de la referida vista, **el TPI ordenó a las partes a presentar un escrito en el cual se expusiera la posición de las partes en torno al crédito reclamado** por el recurrido para que se considerara como un pago de pensión alimentaria.[17]

En cumplimiento con lo anterior, el 18 de diciembre de 2023, el recurrido presentó una *Moción en Cumplimiento de Orden*.[18] En lo pertinente, expresó que su hijo estaba recibiendo la suma de $1,488.00 dólares por concepto de ayuda económica de parte de la Administración de Veteranos, por ser este hijo de un veterano de guerra. Adujo que esta cantidad de dinero era adicional al pago que estaba recibiendo por concepto de pensión alimentaria por lo que, en suma, estaba recibiendo mensualmente cerca de $3,443.00 dólares mensuales. Razonó, en síntesis, que dicho pago debía sustituir la obligación alimentaria. Además, solicitó que aquellos

---

[14] Apéndice del recurso, a las págs. 55-56.
[15] *Íd.*, a la pág. 57.
[16] *Íd.*, a la pág. 58.
[17] *Íd.*, a la pág. 62.
[18] *Íd.*, a las págs. 62-63.

pagos que su hijo hubiese recibido por dicho beneficio debían acreditarse como pago de pensión alimentaria.

Por su parte, el mismo 18 de diciembre de 2023, el joven adulto presentó un *Urgente Memorando de Derecho sobre Relevo de Pensión Alimentaria y Otros Asuntos.*[19] En su escrito, se opuso a que se considerara la cuantía que recibía, por parte de la Administración de Veteranos, como una suma por concepto de pensión alimentaria, por lo que no estuvo de acuerdo en que los dineros recibidos se pudiesen reputar como un crédito a la deuda de pensión alimentaria. Además, esbozó que, en cuanto al relevo de pensión alimentaria, no existía controversia para que el foro primario concediera el mismo, efectivo al momento en que el Tribunal lo ordenara. Por otro lado, alegó que la deuda de pensión alimentaria no era la reflejada por ASUME, porque, al este advenir a la mayoridad, ASUME cerró administrativamente la cuenta, por lo que la deuda que se refleja en la referida agencia no incluye las pensiones alimentarias desde agosto hasta diciembre de 2023. Acentuó que, en los meses señalados, el foro de instancia aún no había decretado el relevo de pensión alimentaria. Por último, expresó que existía una deuda por concepto de honorarios de abogados, adeudados de los procedimientos sobre fijación y modificación de pensión alimentaria, para un total de $7,500.00 dólares, y que el recurrido no había satisfecho la misma. Por lo anterior, solicitó que: (i) se denegara la solicitud sobre acreditación de dinero a la deuda de pensión alimentaria por los dineros que ha recibido el joven por parte de la Administración de Veteranos; (ii) se reconociera que la deuda de pensión alimentaria era de $26,159.26 dólares incluyendo hasta el mes de diciembre de 2023, por no haberse decretado el relevo; (iii) se ordenara a la ASUME a actualizar

---

[19] Apéndice del recurso, a las págs. 75-80.

la deuda al momento del relevo de pensión alimentaria; (iv) se ordenara al recurrido a continuar pagando la suma mensual de $1,923.36 dólares, a través de la ASUME, y que dichos pagos se adjudicaran a la deuda hasta el saldo total; y (v) se ordenara al recurrido a pagar en su totalidad los honorarios adeudados, por la suma de $7,500.00 dólares.

En línea de lo anterior, el 19 de diciembre de 2023, la señora Muñoz Colón presentó una *Moción en Cuanto a Solicitud de Relevo de Pensión Alimentaria y en Apoyo a Solicitud del Joven Alimentista AARM*.[20] En esencia, se unió al pedimento del joven adulto.

Acaecidos varios incidentes procesales innecesarios detallar, el 22 de mayo de 2024, notificada el 1 de julio de 2024, entiéndase, cinco (5) meses después de que el asunto quedara sometido, el foro primario emitió la *Resolución* recurrida.[21] Mediante la *Resolución* recurrida, el tribunal *a quo* concedió un crédito por los $1,488.00 dólares que estuvo recibiendo el joven adulto como beneficio de estudios por ser hijo de un veterano de guerra pensionado. A tenor, ordenó su acreditación a cualquier deuda de retroactivo adeudada. Dispuso, además, dejar sin efecto la pensión alimentaria establecida al 30 de julio de 2023, puesto a que el joven adulto **no requirió, ni demostró que fuese acreedor de la misma y más aún que, en la vista celebrada el 12 de diciembre de 2023, este renunció a solicitar una pensión alimentaria entre parientes**.[22] El foro primario concluyó que, conforme a la evidencia presentada en la vista, que la cantidad de $1,488.00 dólares que el joven adulto recibe hace dos (2) años, como beneficio por ser hijo de veterano, era específicamente para pagos de estudios, gastos que también estaban incluidos en la pensión alimentaria. Por otra parte, el Tribunal

---

[20] Apéndice del recurso, a las págs. 81-85.
[21] *Íd.*, a las págs. 91-96.
[22] *Íd.*, a la pág. 96.

coligió que, dado a que el beneficio era provisto por ser el alimentante retirado de las fuerzas armadas, se le debía de dar el mismo tratamiento que los beneficios que recibía un hijo de un beneficiario del seguro social, que, según el ordenamiento jurídico vigente, sustituye el pago de pensión alimentaria.

En desacuerdo, el 15 de julio de 2024, el joven adulto y la señora Muñoz Colón presentaron una solicitud conjunta sobre reconsideración.[23] En su escrito, solicitaron que se reconsiderara la *Resolución* emitida y, además, solicitaron al foro *a quo* que atendiera los planteamientos relacionados a los honorarios de abogado alegadamente adeudados. Posteriormente, el 28 de agosto de 2024, estas mismas partes presentaron una *Urgente Moción en Solicitud [para que] se Resuelva la Reconsideración.*[24] En respuesta, mediante *Orden,* emitida el 2 de agosto de 2024, notificada el 26 de septiembre de 2024, el foro de instancia denegó la solicitud de reconsideración.[25]

Inconforme, el 28 de octubre de 2024, el joven adulto y la señora Muñoz Colón presentaron un recurso de *Certiorari* en conjunto, en el cual esgrimieron la comisión de los siguientes tres (3) errores:

### PRIMER ERROR

Erró el Honorable Tribunal de Primera Instancia, al conceder al padre alimentante un crédito por los beneficios de estudios que recibió el alimentista bajo el programa de veteranos, aplicando la Carta de Derechos del Veterano Puertorriqueño del Siglo XXI y haber equiparado el beneficio al del seguro social, acreditando el mismo a una deuda de pensión alimentaria correspondiente al alimentista.

---

[23] Apéndice del recurso, a las págs. 97-106.
[24] *Íd.*, a las págs. 107-108.
[25] *Íd.*, a la pág. 109. Luego, en respuesta al escrito presentado por el joven adulto y la señora Muñoz Colón, para que se resolviera la solicitud de reconsideración, el TPI emitió una *Orden,* el 23 de septiembre de 2024, notificada el 26 de septiembre de 2024, denegando nuevamente la reconsideración. Véase, Apéndice del recurso, a la pág. 110.

SEGUNDO ERROR

Erró el Honorable Tribunal de Primera Instancia, al determinar que le correspondía un crédito al alimentante a una deuda de pensión alimentaria correspondiente al alimentista, por los beneficios de estudios que recibió el alimentista bajo el programa de veteranos, sin haber efectuado una vista evidenciaria, ni haber mediado prueba que lo justifique, en claro abuso de su discreción y contrario al Debido Proceso de Ley.

TERCER ERROR

Erró el Honorable Tribunal de Primera Instancia, al dejar de resolver en su Resolución la procedencia del pago de honorarios de abogados impuestos previamente al demandado-recurrido a favor del alimentista, mediante dictámenes precedentes, contrario al Debido Proceso de Ley.

II

## A. Expedición del Recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[26] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

[…].

El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[27]

---

[26] 32 LPRA Ap. V, R. 52.1.
[27] *Íd.*

[...].

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

[...].

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

[...].[28]

Establecido lo anterior, precisa señalar que el recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[29] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[30] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[31] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[32] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

---

[28] *Íd.*
[29] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[30] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[31] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[32] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [33]

Por otra parte, el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[34] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[35]

Por último, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[36]

---

[33] 4 LPRA Ap. XXII-B, R.40.
[34] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[35] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[36] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008)

### III

Ante nuestra consideración se encuentra un recurso de *Certiorari* en el cual la parte peticionaria nos ha convidado a intervenir para que revisemos una *Resolución* que fue emitida con posterioridad a la celebración de una vista y mediante la cual, el foro primario: (i) relevó al señor Reyes Vélez del pago de pensión alimentaria, tras su hijo haber avenido a la mayoridad, no haber requerido ni demostrado ser acreedor de la misma, así como que, en corte abierta, renunció a solicitar una pensión alimentaria entre parientes; y (ii) concedió un crédito a una deuda de pensión alimentaria por concepto de retroactivo, por las sumas de dinero que el joven adulto ha recibido por ser estudiante universitario, como parte de los beneficios de la Administración de Veteranos, por ser hijo de un veterano de guerra, entiéndase, el recurrido.

Por otro lado, nos solicita que intervengamos puesto a que el foro no resolvió en la *Resolución* recurrida, una solicitud instada por esta parte en la cual solicitó que se le ordenara al recurrido a pagar una alegada deuda por concepto de honorarios de abogados vencidos. Tras no haber sido resuelto, lo peticionó por vía de reconsideración.

Ciertamente, del expediente judicial ante nos, se desprende que ante el tribunal de instancia se encontraban pendiente tres (3) controversias.

La *primera* controversia era resolver una solicitud de relevo de pensión alimentaria; la *segunda* era si procedían o no unos créditos a favor del recurrido; y la *tercera,* resolver una solicitud de la parte peticionaria sobre una alegada deuda por concepto de honorarios de abogado.

Es de ver que las primeras dos controversias fueron atendidas y adjudicadas. Sobre ellas versan los primeros dos errores esgrimidos. Sobre la *primera* controversia*,* previo a emitir su

dictamen, el tribunal recurrido ordenó a las partes a someter un memorando de derecho y así lo hicieron; sobre la *segunda* controversia no había reparo en que se concediera el relevo de pensión alimentaria. Ahora bien, el expediente judicial ante nos se encuentra huérfano de documentos que acrediten que la tercera controversia estaba lista para ser adjudicada y que el tribunal de instancia se hubiese negado a resolverla. Abona a lo anterior que el pedimento fue instado por la parte peticionaria como parte de un memorando de derecho requerido por el tribunal recurrido y que era a los únicos fines de discutir lo relacionado a la controversia sobre los créditos. Nada impide que el asunto pueda ser alzado nuevamente por la parte peticionaria posteriormente ante el foro de instancia.

Conforme reseñamos en nuestra previa exposición doctrinal un recurso de *certiorari* es uno de carácter extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[37] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección.[38] Por consiguiente, a diferencia de un recurso de apelación, esta Curia puede tanto expedir como no expedir un auto de *Certiorari*.

Luego de haber estudiado con detenimiento el expediente judicial ante nuestra consideración hemos determinado no intervenir con el recurso ante nuestra consideración. Ello, puesto que los referidos señalamientos de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función

[37] *Rivera et al. v. Arcos Dorados et al.,* supra, a la pág. 207; *800 Ponce de León v. AIG,* supra, a la pág.174 (2020). *Rivera Figueroa v. Joes's European Shop,* 183 supra, a la pág. 596.
[38] *Coop. Seguros Múltiples de P.R. v. Lugo*, supra, a la pág. 208.

discrecional en el caso de autos. Además, no nos encontramos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. El dictamen recurrido no es patentemente erróneo, y encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Además, razonamos que la parte peticionaria no nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia. Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

IV

Por los fundamentos que anteceden, se deniega la expedición del auto de *Certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones